IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as receiver for VESCOR CAPITAL CORP., *et al.*, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> PORTER WHARTON, III, an individual, THE WHARTON GROUP, INC., a Colorado corporation, TERRY WINNICK, an individual, and INTERNATIONAL RESORT AND LEISURE OPERATIONS CONSULTATIONS, a Nevada corporation, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br><br><br><br> Case No. 2:08-CV-00887-DB <br><br><br><br><br> Judge Dee Benson |

Before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) brought by Defendants Terry Winnick ("Winnick"), International Resort and Leisure Operations Consultants ("INTERLOC"), Porter Wharton, III ("Wharton"), and The Wharton Group, Inc. ("Wharton Group") (collectively, the "Defendants"). The Court held a hearing covering this motion on Monday, April 20, 2009, at which the defendants were represented by John A. Adams. The Receiver, Robert G. Wing, was present and represented by M. David Eckersley. After review and consideration of the briefs submitted by the parties, the Court enters the

1

following Memorandum Decision and Order.

## **I. Factual Background**

This action is one of many arising out of the collapse of an alleged Ponzi scheme orchestrated and run by Val Edmund Southwick through a complex web of over 150 corporations and limited liability companies. On May, 5, 2008, the Court appointed Robert G. Wing as Receiver for VesCor Capital Corp., VesCor Capital, Inc., VesCorp Capital, LLC, VesCorp Capital IV-A, LLC, VesCorp Capital IV-M, LLC, and all affiliated limited partnerships, corporations or other business entities (collectively, "VesCor").

The Receiver filed the present lawsuit on November 18, 2008, alleging that Wharton and Winnick acted as consultants to VesCor and received millions of dollars in payments from VesCor during the period the VesCor entities were operated by Southwick as an elaborate Ponzi scheme. Complaint, Dkt. 2, ¶ 1. In addition, the Complaint alleges that Winnick was also an investor with VesCor who received significantly more money that he invested. *Id.* The Receiver seeks the return of these payments as fraudulent transfers and/or because they constitute an unjust enrichment of the Defendants.

The Receiver's Complaint sets out the factual predicate of the case as follows:

> 9. This action arises out of a Ponzi scheme. In 1990, Val Edmund Southwick ("Southwick") began and operated companies referred to collectively as "VesCor." VesCor borrowed money from investors telling them their money would be used to fund the development of commercial and industrial real estate. In fact, VesCor used most of the money it obtained from new investors to pay the debts owed to older investors, to pay commissions on the sale of investments, to fund company operations, and to pay Southwick's personal expenses.
> 10. In 1992, VesCor was sanctioned by the Utah Department of Commerce, Division of Securities ("Division") in a Stipulation and Consent Order, which identified unregistered securities which were offered to investors in

      the State of Utah.

      11. In 2002, VesCor was again sanctioned by the Division in a Stipulation and Consent Order, which identified unregistered securities which were offered and sold to investors in the State of Utah.

      12. In 2004, VesCor agreed with the Division it would discontinue offering securities for sale to Utah residents and cease making offers for the sale of securities from within the State of Utah to investors who resided out of the State. VesCor further agreed to pay investors their principal and accrued interest at the maturity date of their investments or at an earlier call date.

      13. VesCor continued to sell unregistered securities in the State of Utah in violation of the Division's Orders and the 2004 agreement.

      14. By 2006, VesCor had grown to a complex web of over 150 corporations and limited liability companies, registered in Utah and Nevada, and owned interests in commercial and industrial real estate in Nevada, Utah, Montana and California. On May, 31, 2006 the VesCor Ponzi scheme collapsed when Southwick stopped paying monthly interest payments and principal redemptions to most investors.

      15. On March 31, 2008, Southwick pleaded guilty to nine counts of securities fraud, each a felony in the second degree, in the Third District Court of Utah, and was later sentenced by Utah District Court Judge Robin Reese to serve nine consecutive 1-15 year prison terms, the maximum allowed by State law.

      16. On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and five VesCor entities identified as issuers of promissory notes to investors alleging violations of the anti-fraud provisions of the securities laws.

      17. On May 5, 2008, this Court appointed Robert G. Wing as Receiver for VesCor. In this action, the Receiver seeks to recover for VesCor investors money fraudulently transferred from VesCor to transferees who did not provide VesCor with reasonably equivalent value in return for the transfers, and who did not take those transfers in good faith.

Complaint, Dkt. 2, ¶ 9-17.

The Complaint also describes both Winnick and Wharton's alleged association with VesCor. It alleges that Winnick and his company, INTERLOC, received millions of dollars in payments from VesCor. *Id.* at 18. The details of this consulting arrangement between the parties are set out in the Complaint. *Id.* ¶ 20-24. In addition, the Receiver alleges that Winnick also

invested in VesCor and was one of the "winners" of Southwick's scheme in that he received "significantly more money from VesCor than he invested." *Id.* ¶ 19. The Complaint also alleges that Wharton and his company, The Wharton Group, received over one million dollars in consulting fees from VesCor. *Id.* ¶ 25-27. The details of their consulting agreement, and its various "incentive fees," are also set out in the Receiver's complaint. *Id.* ¶ 28-36.

## II. Discussion

The Defendants have moved this court to dismiss the Receiver's fraudulent transfer and unjust enrichment claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that to meet this threshold requirement, a plaintiff's pleading must "nudge[] their claims across the line from conceivable to plausible." 550 U.S. 544, 570 (2007). This requirement serves both "to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success [and] to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "In doing so, all facts alleged in the complaint are taken as true and all

reasonable inferences are indulged in favor of the plaintiffs." *Id.* (quoting *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 881 (10th Cir. 2005)). This presumption applies to well-pleaded facts in the complaint, but not conclusory allegations. *Id.* (quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)).

### A. Fraudulent Transfer Claims

Under the Utah Fraudulent Transfer Act ("UFTA"), "a transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer." Utah Code Ann. § 25-6-5(1)(a), (b). The requisite intent may be inferred from the mere fact that a debtor is managing a Ponzi scheme. *See, e.g.*, *Wing v. Harrison*, 2004 WL 966298, at *2 (D. Utah Apr. 29, 2004); In re *Independent Clearing House*, 77 B.R. 843, 866 (D. Utah 1987). However, the UFTA also provides an affirmative defense to a transferee "who took in good faith and for a reasonably equivalent value." Utah Code Ann. § 25-6-5(1)(a).

In the present case, the Defendants argue that the Receiver's complaint fails to allege: "(1) the factual connection between the Receivership entities and the two entities that entered into the alleged contracts with the Defendants, (2) which categories of transactions between the Defendants and the Receivership entities over a long period of time form the basis of the alleged fraudulent transfers and which do not, (3) which payments (or even which categories of payments) are sought to be avoided and which are not, and (4) for which time periods recovery is being sought." Defendants' Mem. in Supp., Dkt. 11, at 2-3. The Court recognizes that many of

these details were not alleged with great specificity but holds that the Receiver has adequately pleaded its fraudulent transfer claims under the circumstances of the present case.

First, the Complaint sufficiently alleges the existence of a Ponzi scheme. The Complaint provides enough history regarding the manner in which Southwick borrowed, commingled, and transferred investor funds. Southwick's conviction of nine counts of securities fraud for transactions occurring during the period he allegedly was operating VesCor as a Ponzi scheme further underscores the plausibility of the Receiver's claim. In addition, the fact that the Court in 2008 opted for the "extraordinary remedy" of appointing a Receiver, while not alone dispositive, also supports the plausibility of the allegation that Southwick's scheme was a Ponzi scheme. *See, e.g.*, *Citibank, N.A. v. Nyland, Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (stating that a receivership is an extraordinary remedy that should be "employed only where no lesser relief will be effective"); *Ferguson v. Tabah*, 288 F.2d 665, 673 (2d Cir. 1961) (describing a receivership as a "drastic remedy usually imposed only where no lesser relief will be effective").

Second, because the Complaint sufficiently pleaded the existence of a Ponzi scheme, the inference of fraudulent intent applies to transfers made by Southwick during the course of carrying out his scheme. The fact that a certain percentage of Southwick's funds were devoted to legitimate business purposes complicates, and will continue to complicate, this action, but the mere fact that Southwick's scam was not 100% illegitimate does not, at this stage of the proceedings, require the Receiver to do more. The specific facts pertaining to each of the transfers between the VesCor entities and affiliates and the defendants in this case can be ascertained in discovery. Moreover, the defendants are free to establish, at a later point in the

proceedings, that they took the payments during a period when VesCor was not operating as a Ponzi scheme, that they took the payments pursuant to a legitimate business activity in good faith and for a reasonably equivalent value, or that some other defense, affirmative or otherwise, applies in this case.

## B. Unjust Enrichment Claims

The Receiver alternatively pleaded that the payments made to the defendants should be returned as unjust enrichments. The defendants correctly point out that unjust enrichment claims can only be asserted under Utah law when there is no contract between the parties. *Concrete Products Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987) ("Unjust enrichment is a doctrine under which the law will imply a promise to pay for goods or services when there is neither an actual nor an implied contract between the parties."). The Receiver nevertheless defends the propriety of this claim under the circumstances due to the potentially illegal nature of the contracts at issue in this case. *See, e.g.*, *Hays v. Adam*, 512 F. Supp. 2d 1330 (N.D.Ga. Mar. 15, 2007) (allowing an equity receiver to proceed with an unjust enrichment claim in a Ponzi scheme case).

The payments at issue in this case were made pursuant to consulting agreements and investment contracts, both of which, if performed legally, do not constitute a violation of the law. The very crux of the Receiver's complaint, however, is that these contracts were in fact illegal instruments used to carry out Southwick's fraudulent scheme. The Court cannot, at this point in the proceeding, instead presume that these contracts were legal and use that presumption as a basis to dismiss the Receiver's unjust enrichment claim.

### III. Conclusion

Defendants Wharton and Winnick's Motion to Dismiss the Receiver's fraudulent transfer and unjust enrichment claims pursuant to Rule 12(b)(6) is DENIED.

**IT IS SO ORDERED.**

DATED this 14th day of May, 2009.

Judge Dee Benson
United States District Court